**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

---

DAVID CASAS, TROY D. CLARK, PATRICK HOGAN, LINDA L. SOUDER, WILLIAM M. SOULE; SHEILLA A. SAMPSON, WILLIS J. GUYOT, MATTHEW A. McDEVITT, and JAMES P. BRANDT, on behalf of themselves and other past and present employees similarly situated,

Plaintiffs,

v.

CONSECO FINANCE CORP., CONSECO FINANCE SERVICING CORP., CONSECO FINANCE CREDIT CORP., CONSECO FINANCE CORP. – ALABAMA, CONSECO FINANCE CONSUMER DISCOUNT COMPANY, and ABC CORPORATIONS 1-10,

Defendants.

Civil No. 00-1512 (JRT/SRN)

**MEMORANDUM OPINION AND ORDER**

---

Paul J. Lukas, Donald H. Nichols, and Michele R. Fisher, NICHOLS, KASTER & ANDERSON, PLLP, 4644 IDS Center, 80 South Eighth Street, Minneapolis, MN, 55402, for plaintiffs.

Ann Huntrods, Richard G. Mark, and Scott G. Bowman, BRIGGS AND MORGAN, 2400 IDS Center, 80 South Eighth Street, Minneapolis, MN, 55402, for defendants.

FILED MAR 3 . 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD. ____
DEPUTY CLERK ____

Plaintiffs, a group of nearly 2900 current and former loan originators for defendants,[1] bring this action contending they are entitled to overtime compensation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*. This matter is before the Court on cross-motions for summary judgment and a third motion for summary judgment filed by defendants seeking to dismiss certain plaintiffs from this action. At issue in the cross-motions for summary judgment is whether plaintiffs are exempt from the overtime pay provisions of the FLSA. For the reasons that follow, the Court grants in part and denies in part plaintiffs' motion for summary judgment and denies defendants' motion for summary judgment as to liability. The Court also grants in part and denies in part defendants' second motion for summary judgment to dismiss certain plaintiffs from this action for various deficiencies in their claims.

## BACKGROUND

Conseco is a finance company engaged in the business of designing, creating and selling lending products, such as home improvement loans, home equity loans and manufactured and mobile home mortgages.

Plaintiffs are 2,801 past and present "loan originators" who are or were employed in one of the following Conseco division units: the Retail Mortgage Services Division Lending Unit ("MSD") (approximately 2,658 plaintiffs), the Home Improvement Division's Direct Lending Unit ("HID") (approximately 115 plaintiffs) and the Manufactured Housing Division Direct Lending Unit ("MHD") (approximately 59

[1] For simplicity purposes, the Court refers to the named-defendants collectively as either "Conseco" or "defendants."

plaintiffs). Offices in the MSD and MHD divisions are run locally by an area manager, who in turn, report to one of several regional managers. HID offices are managed locally by a district manager who in turn report to Patrick McMullen, the HID Director of Sales and Marketing.

With minor variations, the job duties of the loan originators employed in all three divisions are generally the same. Loan originators use internal leads provided to them by Conseco to make telephone contact with potential customers.[2] Using Conseco's guidelines and standard operating procedures, loan originators try to match the customer's needs with one of Conseco's loan products and obtain information to complete a loan application, such as, income level, home ownership, credit history and property value. Loan originators also run a series of credit reports using credit bureaus integrated into Conseco's computer system. Once this is complete, the loan originator forwards the application information to a loan underwriter for an approval decision. Loan originators have no authority to approve a loan. If the loan is approved, the originator prepares for the closing by gathering documents from the customer, verifying information supplied by the borrower, answering questions, and ordering title work and appraisals. If the loan is denied, the originator communicates the rejection to the customer and enters it into Conseco's system. According to affidavit testimony submitted by defendants, loan originators could negotiate the number of points paid by a

[2] The duties of HID originators differ from the duties of originators in the MSD and MHD divisions in that HID originators receive direct telephone calls from customers generated by direct mail, television and other marketing campaigns.

customer which affects the overall price of the loan and, until June 2000, could adjust interest rates within a floor and ceiling range.

During the relevant time period, loan originators were paid a base salary plus commissions. According to the testimony of Andrew James, senior vice-president of Conseco, an average annual base pay is $25,000 a year and total compensation ranging on average between $65,000 to $70,000 a year.

## ANALYSIS

### I. Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. Only disputes over facts that might affect the outcome of the suit under the governing substantive law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not appropriate if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the nonmoving party. *Id.*

The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The

nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record. *Vette Co. v. Aetna Casualty & Surety Co.*, 612 F.2d 1076 (8th Cir. 1980). However, the nonmoving party may not merely rest upon allegations or denials in its pleadings, but it must set forth specific facts by affidavits or otherwise showing that there is a genuine issue for trial. *Burst v. Adolph Coors Co.*, 650 F.2d 930, 932 (8th Cir. 1981).

## II. Cross-Motions for Summary Judgment on Liability

The parties have filed cross-motions for summary judgment on the issue of whether Conseco violated the FLSA by not paying its loan originators overtime compensation. The answer to this question turns on the following issue: Were plaintiffs exempt employees under the FLSA? If yes, then Conseco is relieved from its legal obligation to pay plaintiffs overtime wages under the Act. If no, then plaintiffs are entitled to overtime pay and in turn, compels a finding that Conseco violated the FLSA as a matter of law.

### A. Exempt vs. Nonexempt

The FLSA establishes as a general rule that employees must be compensated one and one-half times their regular rate of pay for each hour worked in excess of 40 hours per week. 29 U.S.C. § 207(a)(1).[3] This provision does not apply, however, to employees

[3] 29 U.S.C. § 207(a)(1) provides, in pertinent part:

> Except as otherwise provided in this section, no employer shall employ any of his employees, who in any workweek is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a

(Footnote continued on next page.)

who fall within one of the exemptions set forth under the Act. In this case, Conseco argues that plaintiffs fall within one of the following exemptions: 1) the retail or service establishment exemption; 2) the administrative employee exemption; or 3) the outside salesperson exemption. Conseco also argues that a small group of plaintiffs who worked as lead loan originators fall under the executive exemption.

Given the remedial nature of the FLSA, exemptions under the Act are to be "narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit." *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960). Consistent with this principle, it is the employer's burden to establish that it is entitled to the benefit of an exemption and excused from the general overtime payment provision. *Mitchell v. Kentucky Finance Co.*, 359 U.S. 290, 291 (1959); *Reich v. Newspapers of New England, Inc.*, 44 F.3d 1060, 1070 (1st Cir. 1995).

There is almost no dispute in this case that plaintiffs worked more than forty hours per week during the relevant time period[4] or that Conseco did not pay plaintiffs for extra time worked. The sole issue is whether plaintiffs fall under one of the above-listed exemptions. The Court addresses each of the asserted exemptions in turn.

---

(Footnote continued.)

> workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

[4] As the Court will discuss more fully in connection with defendants' second motion for summary judgment, Conseco argues that the FLSA claims of some plaintiffs must be dismissed because they fail to allege that they worked over forty hours a week.

### 1. Retail or Service Establishment Exemption

Conseco first argues that plaintiffs are or were employed as commissioned sales employees and thus fall within the retail or service establishment exemption under 29 U.S.C. § 207(i) of the FLSA. This section provides, in relevant part:

> No employer shall be deemed to have violated subsection (a) of this section by employing any employee of a retail or service establishment for a workweek in excess of the applicable workweek specified therein, if:
>
> (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under section 206 of this title; and
>
> (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services.

In order to qualify for treatment under § 207(i), Conseco must first satisfy the threshold question that it is a "retail or service establishment." To answer this question, a discussion of two provisions under the FLSA, 29 U.S.C. § 213(a)(2) and § 207(i), relevant caselaw and the regulations promulgated thereunder is necessary.

#### a. *Mitchell v. Kentucky Finance Co.*

In *Mitchell v. Kentucky Finance Co.*, 359 U.S. 290 (1959), the United States Supreme Court expressly held that enterprises in the financial field such as banks, credit companies and personal loan companies do not qualify as a "retail or service establishment" within the meaning of § 213(a)(2). *Id.* at 295. In reaching this decision, the Court noted "that the Administrator [of the Department of Labor] had previously ruled in 1942 that personal loan companies and other business entities in what may broadly be called the 'financial industry' were not within the scope of the [§ 213(a)(2)]

exemption." *Id.* at 757 n.1 (citing Interpretive Bulletin No. 6). Although Congress amended § 213(a)(2) in 1949, the Court concluded that Congress did not intend to disrupt the Department's earlier interpretation excluding financial companies from this exemption. *Id.* at 294. In fact, the legislative history from the 1949 amendment reaffirmed the Administrator's interpretation that § 213(a)(2) does not include enterprises in the financial industry: "Any residual doubt on this score is dispelled by the explicit and repeated statements of the sponsors of the amendatory legislation and in the House and Senate Reports to the effect that 'the amendment does not exempt banks, insurance companies, building and loan associations, credit companies . . . because there is no concept of retail selling or servicing in these industries.'" *Id.* at 295.

In 1961, two years after *Mitchell*, Congress enacted 29 U.S.C. § 207(i), which allows "retail or service establishments" not qualifying for the § 213(a)(2) exemption to comply with the FLSA's overtime requirements by paying its commissioned employees at a rate exceeding one and one-half times the minimum wage for all hours worked. *Reich v. Delcorp, Inc.*, 3 F.3d 1181, 1184 (8th Cir. 1993). Nonetheless, Congress made clear that the definition of "retail or service establishment" contained in § 213(a)(2) applies with equal force to § 207(i). *Id.* (citing 29 C.F.R. §§ 779.312; 779. 411).[5]

---

[5] Although § 213(a)(2) defines the term "retail or service establishment" as an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry, the Supreme Court has rejected the "industry-usage" test as the single touchstone for determining whether a particular establishment is retail or service. *Idaho Sheet Metal Works, Inc. v. Wirtz*, 383 U.S. 190, 201-02 (1966).

**b. Department of Labor Regulations**

The Secretary of Labor has promulgated regulations governing the interpretation of "retail or service establishment." In 29 C.F.R. § 779.318, the regulations detail some of the characteristics and examples of a retail or service establishment: it sells goods or services to the general public; serves the everyday needs of the community; is at the very end of the stream of distribution and does not take part in the manufacturing process; and it provides the general public its services for the comfort and convenience of such public in the courts of its daily living. *Id.* Illustrative of such establishments are: "[g]rocery stores, hardware stores, clothing stores, coal dealers, furniture stores, restaurants, hotels, watch repair establishments, barber shops and other such local establishments." *Id.*; *see also* 29 C.F.R. § 779.320 (partial list of establishments whose sales or service may be recognized as retail). The Secretary has also included a regulation that provides a partial list of establishments "to which the retail concept does not apply." 29 C.F.R. § 779.317. This list is highly relevant to the facts of this case, for included on this list is "credit companies, including small loan and personal loan companies and finance companies." *Id.*

**c. Analysis**

Plaintiffs argue that Conseco does not qualify for the "retail or service establishment" exception because both the United States Supreme Court and the Department of Labor have specifically determined that banks, credit and finance companies lack the "retail concept" necessary to qualify for this exemption as a matter of law.

Conseco contends that coverage of these plaintiffs under the FLSA is at odds with the purpose of the FLSA. Conseco emphasizes that plaintiffs are well-compensated employees performing sophisticated job duties and, as such, are not the intended beneficiaries of the FLSA. Conseco argues further that neither *Mitchell* nor 29 C.F.R. § 779.317 are controlling. According to Conseco, *Mitchell* is both factually and legally distinguishable from this case and regulation § 779.317 is not entitled to judicial deference because it is arbitrary and capricious. To support the latter argument Conseco relies on two cases, *Martin v. Refrigeration School, Inc.*, 968 F.2d 3 (9th Cir. 1992) and *Reich v. Cruises Only, Inc.*, No. 95-660-CIV-ORL-19, 1997 WL 1507504 (M.D. Fla. 1997). In both cases, the courts declined to defer to § 779.317 and instead applied the multi-factor test set forth in § 779.318 to determine whether the establishment at issue qualified as retail or service. Conseco urges the Court to follow the same reasoning here. Specifically, it contends that Conseco satisfies all the factors of a retail or service establishment set forth in § 779.318 and that it ultimately meets the requirements set forth in § 207(i).

Upon consideration and review, the Court concludes that Conseco has not satisfied the threshold question that it is a retail or service establishment. The holding in *Mitchell* that financial companies lack the retail concept to qualify under the exemption is clear and still good law. Conseco, which is undeniably a financial company, falls squarely within this holding. The argument by Conseco that *Mitchell* is factually distinguishable is unpersuasive. Conseco incorrectly states that the Kentucky Finance Company was engaged in the business of purchasing conditional sales contracts from dealers in

furniture and appliances and thus had no contact with the individual consumer. A review of the *Mitchell* opinion plainly reveals that the defendant was also engaged in the business of making small personal loans. 359 U.S. at 290. Moreover, the Supreme Court's discussion leading to its ruling focused exclusively on the personal loan aspect of the company's business. *Id.* at 291. Therefore, the defendant in *Mitchell* was engaged in the same type of business as Conseco is here—lending money to individual consumers.

The Court recognizes that several courts have voiced disapproval of regulation § 779.317. *Refrigeration School*, 968 F.2d at 6-7; *Cruises Only*, 1997 WL 1507504 at *3. However, given the Supreme Court's decision in *Mitchell,* the inclusion of financial companies in regulation § 779.317 carries more weight than the particular establishments at issue in either *Refrigeration School* (trade schools) or *Cruises Only* (travel agencies). Indeed, *Mitchell* is cited as direct support for the presence of financial companies on the list.

The Court also finds the reasoning in *Reich v. Delcorp, Inc.*, 3 F.3d 1181 (8th Cir. 1993), instructive. The issue in that case was whether an in-home carpet and drapery cleaning business could qualify as a "retail or service establishment" under § 207(i). *Id.* at 1182. In that case, the post-1949 amendments Congress made with respect to the treatment of laundries was crucial in the court's decision that laundries could qualify for the retail or service establishment exemption. *Id.* at 1183-86. Indeed, the court expressly stated that "if nothing had happened since the 1949 amendments, we would be constrained to hold that laundries cannot qualify as a "retail or service establishment." *Id.* at 1184. Here, by contrast, Congress has done nothing to the FLSA to alter *Mitchell*'s

treatment of financial institutions since that decision or the 1949 amendments. Although Conseco attempts to make something of the fact that Congress enacted § 207(i) in 1961, two years after *Mitchell*, that fact is immaterial because Congress expressly stated that the understanding of "retail or service establishment" in § 213(a)(2) applies equally to § 207(i). *Id.* at 1184; *see also* 29 C.F.R. § 779.312; § 779.411.

Although the Court ultimately rejects Conseco's argument, the Court observes that some of the arguments Conseco advances in favor of its position are not without force. The Court takes particular note of Conseco's argument that changes in the nature and operation of the financial industry since *Mitchell* require reconsideration of that decision. However, in the Court's view, these arguments are best directed at Congress or the Department of Labor rather than this Court. *Accord Bratt v. County of Los Angeles*, 912 F.2d 1066, 1071 (9th Cir. 1990). Thus, for all the foregoing reasons, the Court concludes that the retail or service exemption does not apply to the facts of this case.

### 2. Administrative Employee Exemption

Conseco next argues that plaintiffs were at all relevant times exempt from the overtime requirement under the administrative employee exemption. 29 U.S.C. § 213(a)(1) ("The provisions of . . . section 207 of this title shall not apply with respect to—any employee employed in a bona fide . . . administrative . . . capacity"). The Department of Labor has issued regulations interpreting this exemption. These regulations outline both "long" and "short" tests of bona fide administrative employee status. The parties agree that the two-prong "short test" applies in this case because

Conseco's loan originators earned more than $250 per week. 29 C.F.R. § 541.2(e)(2); § 541.214.

Thus, under the applicable "short test," an employee qualifies as a bona fide administrative employee if: 1) the primary duty of plaintiffs consists of "the performance of office or nonmanual work directly related to management policies or general business operations of his employer or his employer's customers"; and 2) that such primary duty "includes work requiring the exercise of discretion and independent judgment." 29 C.F.R. § 541.2(a); *id.*(e)(2). Regulations further define the first prong of the test as follows:

> The phrase "directly related to management policies or general business operations of his employer or his employer's customers" describes those types of activities relating to the administrative operations of a business as distinguished from "production," or, in a retail or service establishment, "sales" work. In addition to describing the types of activities, the phrase limits the exemption to persons who perform work of substantial importance to the management or operation of the business of his employer or his employer's customers.

29 C.F.R. § 541.205(a). Courts have interpreted this regulation as subdividing the first prong of the short test into two subparts, specifically, that the employee must be engaged in "administrative" rather than "production" activity and that the activity be of "substantial importance" to management or operations. *Reich v. John Alden Life Ins. Co.*, 126 F.3d 1, 8-9 (1st Cir. 1997); *Reich v. Chicago Title Ins. Co.*, 853 F. Supp. 1325, 1329 (D. Kan. 1994). Thus, in order to qualify for this exemption, Conseco must prove that: 1) plaintiffs are engaged in an administrative, not a production, capacity; 2) plaintiffs' administrative work is substantially important to Conseco's management or operations and 3) plaintiffs exercise discretion and independent judgment in performing their duties.

**a. The Administrative/Production Dichotomy**

According to 29 C.F.R. § 541.205(b), which delineates the "administrative/production dichotomy," administrative work includes "work performed by so-called white collar employees engaged in 'servicing' a business as, for, example, advising the management, planning, negotiating, representing the company, purchasing, promoting sales, and business research and control." *Id.* Conversely, employees whose primary duty[6] is to produce the commodity that the enterprise exists to produce or market are engaged in "production" activity and are not exempt. *Chicago Title Ins. Co.*, 853 F. Supp. at 1330; *John Alden*, 126 F.3d at 9 ("non-manufacturing employees can be considered "production" employees in those instances where their job is to generate (i.e., "produce") the very product or service that the employer's business offers to the public").

Plaintiffs argue that the undisputed facts confirm that plaintiffs work in a production capacity, that is, their primary duties are to produce the very product that Conseco exists to produce: design, create and sell loans. Plaintiffs emphasize that loan originators did not participate in any duties relating to the administrative operation of the business. They had no supervisory authority and they had no role in the creation or enforcement of Conseco's policies and procedures. To the contrary, the performance of their job required them to follow Conseco's standard operating procedures and guidelines and determine whether a customer's financial criteria and loan needs fit within one of

---

[6] Applicable regulations define an employee's "primary duty" as "that duty which occupies the major part, or more than fifty percent, of an employee's time." 29 C.F.R. § 41.103.

Conseco's existing loan options. Their job performance was measured almost exclusively on whether or not they met a numeric sales quota.

On this record, plaintiffs argue that they are production workers similar to plaintiffs in two other cases, *Chicago Title Ins. Co.*, 853 F. Supp. at 1329 and *Martin v. Cooper Electric Supply Co.*, 940 F.2d 896 (3d Cir. 1991). In *Chicago Title*, the court was asked to determine whether escrow closers fell within the administrative exemption to the FLSA. The facts revealed that the plaintiffs' employer, Chicago Title, was engaged in the business of insuring title for real property. 853 F. Supp. at 1327. Escrow closers were responsible for managing an escrow file from the date of deposit until closing. *Id.* Specifically, the duties of escrow closers included, among other things, direct contact with customers; quoting fees from title insurance; responding to questions from customers; preparing the closing documents; setting up the closing appointment; and supervising the execution of closing documents. *Id.* They were paid by salary ranging from $20,000 to $30,000 with the possibility of incentive bonuses amounting to as much as $10,000. *Id.* at 1328. Based on these facts and review of the relevant regulations, the district court found that the primary duty of the escrow closers is to carry out the day-to-day closing operations of the defendant. *Id.* at 1330. Consequently, the court concluded that plaintiffs worked in a production, rather than an administrative, capacity and thus were nonexempt employees under the Act.

In *Martin v. Cooper Electric,* the Third Circuit was asked to determine whether inside salespersons worked in a production capacity and thus did not fall within the administrative exemption of the Act. 940 F.2d 896 (3d Cir. 1991). In *Martin,* the

employer, Cooper Electric, was a wholesaler engaged in the business of selling electrical products. *Id.* at 899. The employees at issue, the company's inside salespeople, worked an average of 45 hours per week and spent the majority of that time in the office making telephone sales of electrical products or in work closely related to selling electrical products. *Id.* at 902. Sales were made primarily to contractors, industrial buyers and institutional organizations. *Id.* Although plaintiffs had some ability to deviate upward or downward from these price quotes, pricing was largely preset through an in-house computer which coordinates a pricing matrix based on the customer's record of purchases. *Id.* at 903. Also, if an item was not in stock, the salesperson negotiated the cost to Cooper Electric with the manufacturer and then negotiated the selling price to the customer. *Id.* Salespersons were paid on a salary basis plus incentive bonuses based on sales performance. *Id.* at 902.

On this record, the Third Circuit agreed with the district court's conclusion that the inside salespersons were production workers and thus did not qualify for the administrative exemption. *Id.* at 903. In reaching this conclusion, the court emphasized that Cooper Electric's primary business purpose is to produce sales of electrical products. Inside salespersons did exactly that—produce sales of electrical products. *Id.* The Court further noted that even though the salespersons could sometimes negotiate the sales price of the products, the court found this was only an "intermittent, secondary employment responsibility." *Id.* at 904. Their primary responsibility, which is the focus of the test, is to produce sales.

Conseco, by contrast, argues that plaintiffs' work was administrative. To support this argument, defendant relies heavily on *Reich v. John Alden Life Ins. Co.*, 126 F.3d 1 (1st Cir. 1997), a case defendant argues is factually similar to the case at bar. *John Alden* involved the question of whether marketing representatives or marketing specialists fell within the administrative employee exemption of the FLSA. John Alden was engaged in the design, creation and sale of various types of insurance products. *Id.* at 3. Following the common practice in the insurance industry, the company did not sell its products through direct contacts with customers but instead relied upon licensed independent agents to provide its customer base. *Id.* Generally, an agent would recommend a variety of insurance products, including John Alden products and those of its competitors to a prospective end-purchaser. *Id.* When a customer decided to purchase a John Alden product, the agent would act as an intermediary between the company and the end-purchaser. *Id.*

The primary duty of marketing representatives at John Alden was to cultivate this independent agent sales force and thereby ultimately increase sales of John Alden products. *Id.* Specifically, it was a marketing representative's duty to keep in contact with agents; keep the agents up to date concerning John Alden products; make agents aware of any pricing changes; discuss with the agents how John Alden's products might meet the particular needs of an agent's current customer; help their agents develop proposals for bidding on new business; pass along articles to the agent about the company and sometimes give small-group presentations about John Alden's products. *Id.* The record also revealed that, although the representatives received guidance about suggested

points of emphasis during weekly training sessions, they independently decided which products to emphasize to a particular agent and which of their agents to contact on a given day. *Id.* at 4. In addition to a base salary of $34,000 to $37,000, marketing representatives earned quarterly incentive and bonus pay based on their performance. *Id.*

On this record, the court held that "the day-to-day activities of marketing representatives are more in the nature of 'representing the company' and 'promoting sales' of John Alden products, two examples of exempt administrative work [under the regulations]." *Id.* at 10. 29 C.F.R. § 541.205(b). Conseco urges the Court to find that plaintiffs here are engaged in the same type of marketing and promoting activity as the plaintiffs in *John Alden*. Conseco also relies on a recent Department of Labor opinion issued on February 16, 2001, in which the DOL concluded that the primary duties of the loan officers in that case were of an administrative nature.

After careful consideration, the Court concludes that plaintiffs are production rather than administrative employees. Conseco's primary business purpose is to design, create and sell home lending products. As loan originators making direct contact with customers, it is plaintiffs' primary duty to sell these lending products on a day-to-day basis. As is evident from a description of plaintiff's job duties, plaintiffs are responsible for soliciting, selling and processing loans as well as identifying, modifying and structuring the loan to fit a customer's financial needs. In the Court's view, these duties establish that plaintiffs are primarily involved with "the day-to-day carrying out of the business" rather than "the running of [the] business [itself]" or determining its overall course or policies." *Bratt v. County of Los Angeles*, 912 F.2d at 1070.

Contrary to Conseco's assertion, the Court does not find the marketing representatives in *John Alden* similar to the loan originators here. As the court in *John Alden* emphasized, marketing representatives were John Alden's primary contact with the insurance market. 126 F.3d at 10. They represented the company by keeping the market informed of John Alden product offerings and pricing structure. *Id.* They advised sales agents regarding which products to market against competing products, and how to put bid proposals together on new business. *Id.* Under these facts, marketing representatives were engaged in "something more than routine selling efforts focused simply on particular sales transactions." *Id.*

By contrast, plaintiffs here are employed by Conseco to make direct sales of loans to individual customers. Unlike the marketing representatives described above, whose primary duty it is to market John Alden products to an independent sales force of insurance agents, plaintiffs here are the sales force. Plaintiffs' efforts are not "aimed at promoting (increasing, developing, facilitating, and or maintaining) customer sales *generally*." *Id.* at 10 (emphasis in original). Rather, plaintiffs are actually selling loans directly to individual customers, one loan at a time. Furthermore, as a review of numerous separation notices contained in the record reveals, plaintiffs' performance was measured largely according to their sale production. These differences persuade the Court that plaintiffs are primarily responsible for sales, rather than the broader and more policy-oriented function of "promoting sales" or "representing the company" within the meaning of the regulations.

For these reasons, the Court finds the facts of this case more analogous to those in *Cooper Electric* and *Chicago Title* than *John Alden*. Accordingly, the Court concludes that plaintiffs' primary duties are more in the nature of production than administrative work.

**b. Discretion and Independent Judgment**

The Court also finds that plaintiffs lack the discretion and independent judgment necessary to qualify for the exemption. According to the regulations, "the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.207(a). The term "also implies that the person has the authority or power to make an independent choice, free from immediate direction or supervision and with respect to matters of significance." *Id.* In contrast, "an employee who merely applies his knowledge in following prescribed procedures or determining which procedure to follow, or who determines whether specific standards are met or whether an object falls into one or another of a number of definite grades, classes, or other categories is not exercising discretion and independent judgment within the meaning of section 541.2 of the regulations."

From the information contained in the record, the Court finds that the decisions plaintiffs were empowered to make concerning whether to proceed with an application, which lending product to suggest, negotiating pricing by adding closing points and taking other customer circumstances into account when selling the loan were all governed by Conseco's pre-existing established standing operating procedures and guidelines. It is

also undisputed that plaintiffs had no authority to approve a loan absent approval of the underwriting department.[7] On this record, the Court finds that plaintiffs were using skills in applying techniques, procedures or specific standards of Conseco rather than exercising the kind of independent judgment and discretion within the meaning of the regulations to qualify under the administrative exemption. The DOL opinion upon which Conseco relies reaches the same conclusion. Huntrods Aff. Exh 3, Feb. 16, 2001 Loan Officers/Exempt Status Opinion Letter (concluding that "the loan officers in question are not exercising the necessary discretion and independent judgment within the meaning of the regulations, and would not be exempt as administrative employees").

For all the foregoing reasons, the Court concludes that plaintiffs are not exempt under the administrative employee exemption.

### 3. Outside Sales Exemption

Conseco next claims that plaintiffs are exempt from the overtime provisions because they qualify as outside salespersons. 29 U.S.C. § 213(a)(1). The regulations define an outside salesperson as a person (1) "who is employed for the purpose of and who is customarily and regularly engaged away from his employer's place or places of business" in making sales; and 2) who does not devote more than 20% of time to activities other than outside sales. 29 C.F.R. § 541.500; *Chicago Title Ins. Co.*, 853 F. Supp. 1332. Work performed that is incidental to and in conjunction with the employee's

[7] Conseco makes much of the fact that plaintiffs could take an application to a loan underwriter and argue that special circumstances warranted approving a loan even though the applicant's criteria fell outside the guidelines. However, in the Court's view, this fact further supports the conclusion that plaintiffs lacked the discretion and independent judgment necessary to qualify under this exemption.

own outside sales or solicitation is also considered exempt work. 29 C.F.R. § 541.500(b); 541.503. Inside sales, however, is nonexempt work. 29 C.F.R. § 502(a); 29 U.S.C. § 506.

At his deposition, Andrew James, a senior vice-president for Conseco and Conseco's 30(b)(6) designee, testified that loan originators generally spend 80 to 90 percent of their time in the office. James Depo. at 23. Based on this testimony alone, the evidence is clearly insufficient to establish that plaintiffs qualify for this exemption. However, Conseco submitted two affidavits of Mark Quinn, another senior vice-president of Conseco, in support of its motion for summary judgment. In the first affidavit, Quinn testified that retail originators spent 70 percent or more of their time working outside of their branch office. In a second affidavit, submitted in reply to plaintiffs' response brief, he states that loan originators spent an additional 10 to 15 percent of their time performing incidental duties such as planning itineraries and writing sales reports. Conseco thus argues that based on Quinn's affidavit testimony, defendants have made it "plain and unmistakable," that plaintiffs satisfy the requirements of the outside salesperson exception. For the reasons set forth below, the Court disagrees.

In order to qualify for this exemption, the Court would have to completely disregard the deposition testimony of James and fully credit the testimony of Quinn in his affidavits submitted in support and in reply to Conseco's motion for summary judgment. The Court declines to do this. The law is well-settled in the Eighth Circuit that a party cannot avoid summary judgment by affidavit testimony that contradicts earlier pleading and deposition testimony. *Knudsen v. United States*, 254 F.3d 747, 752 (8th Cir. 2001);

*Webb v. Garelick Mfg. Co.*, 94 F.3d 484, 488 (8th Cir. 1996); *Garnac Grain Co., Inc., v. Blackley*, 932 F.2d 1563, 1568 (8th Cir. 1991). In this case, James clearly testified during discovery that plaintiffs spend most of their time in Conseco's offices. Conseco's suggestion that James was confused at the time of his deposition is not supported by the record. A review of the deposition transcript reveals that plaintiffs' counsel clearly defined the time period as limited to before March 1, 2000. James Depo. at 19 (asking the deponent: "Could you describe for me, and again, **we will talk before March 1 of 2000**, could you describe for me in general terms what a retail originator's job duties are or were?") (emphasis added). Additionally, James does not provide any explanation in the affidavits he submitted as part of the summary judgment motions that he was confused at the time he answered the questions. *Garnac Grain Co.*, 932 F.2d at 1568. Accordingly, the Court simply cannot credit the conflicting testimony of Quinn and Conseco falls well short of satisfying its burden that plaintiffs qualify for the outside salesperson exemption.

**4. Executive Exemption**

Finally, Conseco argues that a group of plaintiffs who Conseco employed as lead loan originators satisfy the requirements of the executive employee exemption. 29 U.S.C. § 213(a)(1). According to the regulations, an executive employee is one: "1) whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized subdivision of the employer's enterprise; and

(2) who customarily and regularly directs the work of two or more other employees." 29 C.F.R. § 541.1(f).[8]

According to affidavit testimony submitted by Conseco in support of its motion, lead loan originators typically supervised a subdivision or team of four or five loan originators. Duties of lead loan originators included training, answering questions, counseling loan originators on job performance and other supervisory duties. Leads also participated in hiring decisions, participated in performance reviews of loan originators and recommended disciplinary actions when appropriate. Generally, the supervisory job duties of a lead originator consumed as much as 50% of that employee's time in a given week. Finally, most leads were paid a higher salary than regular loan originators. On this record, Conseco claims that lead loan originators qualify under the executive exemption. Alternatively, Conseco claims leads are exempt based on a combination of the executive and administrative exemptions. 29 C.F.R. § 541.600(a).

In response, plaintiffs point to the deposition testimony of several lead loan originators whose testimony conflicts with that of Conseco's affiants. According to these plaintiffs, they spent very little time, as little as 5%, on supervisory duties. Plaintiffs further minimized the significance of the additional duties they took on, stating that aside from answering questions "from time to time" and collecting information for managers, their duties continued to be the same as all other loan originators. Given the conflicting testimony concerning the activities of the lead loan originators, particularly as to the time actually spent conducting duties which might qualify for the executive exemption, the

[8] Because plaintiffs make over $250 a week, the "short test" is applicable.

Court concludes that issues of material fact remain to preclude summary judgment on this issue.

## III. Defendants' Second Motion for Summary Judgment for Dismissal of Certain Plaintiffs

Conseco brings a second motion for summary judgment to dismiss certain plaintiffs for defects in their claims on one or more grounds. Specifically, Conseco brings this motion to dismiss all opt-in plaintiffs who were not employed as loan originators during the statutory period; who accepted Department of Labor settlements; who failed to claim to have worked any overtime; or who filed their consent forms after the September 4, 2001 opt-in deadline set by the Magistrate Judge.

### A. Employment During The Relevant Statutory Time Period

As a threshold matter, plaintiffs are entitled to overtime compensation only if they were employed as loan originators during the relevant statutory period. It is undisputed that the statutory period end date in this case is March 1, 2000 for MSD loan originators and April 1, 2000 for HID and MHD loan originators. It was on these dates that Conseco reclassified loan originators in all three divisions as nonexempt employees under the FLSA and started paying them overtime wages.

The FLSA provides for a two-year statute of limitations period. 29 U.S.C. § 255. However, this period can be extended for an additional year if an employer's violation of the FLSA was willful. *Id.* The FLSA also provides that the limitations period is calculated from the time a plaintiff files his or her respective opt-in consent form. 29 U.S.C. § 256. Consequently, each individual plaintiff's statutory period varies depending

on when a person commenced his or her respective claim against Conseco. For example, for a plaintiff who worked in the mortgage services division and who filed his consent form on June 22, 2000, the statutory period begins on June 22, 1998 or June 22, 1997, depending on whether the two or three year limitations period applies, and ends on March 1, 2000, the date upon which the position was reclassified as nonexempt.

Conseco challenges the claims of certain plaintiffs on three separate grounds: 1) plaintiffs who fall outside the statutory period because they did not begin their employment with Conseco until **after** the March or April 2000 reclassification; 2) plaintiffs whose claims do not fall within the applicable two-year limitations period; and 3) plaintiffs who filed their consent forms after September 4, 2001, the date Conseco claims the Magistrate Judge set as the opt-in deadline.

As to the first class of plaintiffs, plaintiffs concede that individuals who started working for Conseco after the reclassification occurred do not have actionable claims for overtime wages and must be dismissed. The Court agrees and accordingly dismisses the claims of those plaintiffs whose employment commenced after the applicable March or April 2000 reclassification date.

The second class of plaintiffs involves those individuals who fall outside the two-year limitations period but who would be eligible for overtime compensation should the Court determine that an additional year of liability applied for a willful violation of the Act. To date, plaintiffs have not amended their complaint to add a claim for willfulness, but may still do so should any of the outstanding discovery support such a claim. Given this status, the Court believes the best course of action is to allow plaintiffs who fall

within this category to remain part of the action until it becomes clear whether or not plaintiffs intend to amend their complaint to raise a claim for willfulness. Should plaintiffs decide not to amend their complaint to allege willfulness or should an amendment be made but the Court determine that the evidence does not support such a claim and the statutory period is limited to two years, Conseco may then renew this motion to dismiss those plaintiffs who fall outside the two-year limitations period.

Conseco next argues that a third class of plaintiffs who filed their consent forms after September 4, 2001 are barred and should be dismissed from this action. Plaintiffs argue that it is not clear whether September 4, 2001 is in fact the court-ordered deadline for joining this action. Plaintiffs emphasize that although the Magistrate Judge referenced this date in a footnote to her August 6, 2001 order, the last time the Magistrate Judge directly addressed this issue was on March 22, 2001. In that order, the Magistrate Judge extended the opt-in deadline indefinitely as a sanction for defendants' failure to comply with requested discovery.

The Court has reviewed both orders and finds that the record is unclear on this point. Accordingly, the Court will remand this issue to the Magistrate Judge for clarification of the applicable opt-in deadline before ruling on this motion. Depending on how the Magistrate Judge rules, Conseco may then renew this motion afterwards, if necessary.

### B. Release of Claims

The FLSA authorizes the Secretary of the Department of Labor to supervise the payment of unpaid overtime compensation owing to employees under 29 U.S.C. § 207(a).

29 U.S.C. § 216(c). Section § 216(c) further provides that "the agreement of any employee to accept such payment shall upon payment in full constitute a waiver by such employee of any right he may have under subsection (b) of this section to such . . . unpaid overtime compensation and an additional equal amount as liquidated damages."

After the commencement of this lawsuit, the Department of Labor conducted audits of Conseco's Dallas, Texas and Eagan, Minnesota offices. Pursuant to these audits, many loan originators who are now plaintiffs in this litigation entered into settlement agreements for payment of overtime wages in exchange for the release of their claims. Conseco thus seeks to have all plaintiffs who signed release of claim waivers dismissed pursuant to such agreements.

Plaintiffs contend that plaintiffs who entered into settlement agreements fall into two different categories: 1) those who settled their claims with Conseco prior to opting in to this litigation; and 2) those who accepted settlement agreements after opting in to this litigation. Plaintiffs do not contest the dismissal of the first group of plaintiffs. However, plaintiffs contest the dismissal of the second group of plaintiffs on the basis that an employee's right to pursue a private action is not terminated upon the resolution of a Department of Labor action if the employee had previously filed private litigation. Plaintiffs cite *Donovan v. University of Texas at El Paso*, 643 F.2d 1201 (5th Cir. 1981), in support of this proposition. However, *Donovan* is inapposite to the case at bar. *Donovan* deals with the very narrow procedural issue of whether DOL-filed FLSA actions are subject to the class certification requirements of Rule 23. *Id.* at 1203. Although the court noted in passing that the filing of a lawsuit by the DOL does not

terminate the litigation rights of a plaintiff in a previously filed private FLSA lawsuit, that point is irrelevant to the matter at issue here. The DOL never filed a lawsuit on behalf of plaintiffs. Furthermore, the court made this point in reference to the latter part of 29 U.S.C. § 216(c) ("The right provided in subsection (b) of this section to bring an action by or on behalf of any employee to recover the liability specified in the first sentence so such subsection shall terminate **upon the filing of a complaint by the Secretary** in an action under this subsection in which a recovery is sought of unpaid overtime compensation under sections 207 . . .") (emphasis added). The issue here involves the rights of plaintiffs who entered into DOL-supervised settlement agreements and thus deals with the first part of § 216(c). This provision plainly states that "any agreement of any employee to accept such payment shall **upon payment in full** constitute a waiver by such employee of any right he may have under subsection (b)." (Emphasis added.) Thus, the triggering event is through "payment in full," not whether a plaintiff accepted a settlement agreement before or after the plaintiff opted into the litigation. Accordingly, the Court is persuaded by Conseco's argument that all plaintiffs who signed release of claims in connection with the Department of Labor investigations and have received payment thereunder can no longer maintain an action against Conseco and are therefore dismissed. *Rose v. Consolidated Elec. Distributors, Inc.*, 816 F. Supp. 489 (N.D. Ill. 1993). The Court thus grants this portion of defendants' motion and dismisses with prejudice the claims of all plaintiffs who entered into settlement agreements with Conseco.

### C. Failure to Allege Unpaid Overtime Wages

Finally, Conseco seeks to dismiss those plaintiffs who failed to allege that they worked more than forty hours a week during the relevant time period and thus have no claim for unpaid overtime wages. 29 U.S.C. § 207(a)(1). Plaintiffs agree that two plaintiffs on Conseco's list, George Ackley and Travis Grosdidier, did not work overtime.[9] However, plaintiffs contest the dismissal of the other plaintiffs on Conseco's list because these other plaintiffs did claim overtime in its response to defendants' Interrogatories.

While it is true that aside from Ackley and Grosdidier, plaintiffs on Conseco's list have claimed through interrogatory responses that they worked hours over forty a week, the Court is troubled by the fact that many of these responses are unsigned and thus unexecuted. To remedy this defect, the Court orders that plaintiffs submit executed interrogatory answers to Conseco no later than **May 1, 2002**. For the moment, the Court will deny Conseco's motion, but will allow it to move for dismissal of plaintiffs who fall within this category if plaintiffs fail to comply with the above deadline.

## ORDER

Based upon the foregoing, the submissions of the parties, the arguments of counsel and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

---

[9] According to plaintiffs, these individuals have already executed withdrawal forms to that effect. A review of the docket reveals that this is correct. *See* Docket No. 218 (Notice of Withdrawal of Travis Grosdidier) and Docket No. 223 (Notice of Withdrawal of George Ackley).

1. Plaintiffs' Motion for Summary Judgment as to Liability [Docket No. 266] is **GRANTED in part and DENIED in part.** Plaintiffs' motion is **GRANTED** as to liability for all non-lead loan originators. Plaintiffs' motion is **DENIED** with respect to whether lead loan originators are exempt under the executive exemption

2. Defendants' Motion for Summary Judgment as to Liability [Docket No. 269] is **DENIED**.

3. Defendants' Second Motion for Summary Judgment [Docket No. 317] is **GRANTED in part** and **DENIED in part**:

   a. Defendants' motion to dismiss those plaintiffs whose employment with Conseco commenced after the applicable March or April 2000 reclassification is **GRANTED**. The claims of all plaintiffs who fall within this category are **DISMISSED WITH PREJUDICE**.

   b. Defendants' motion to dismiss those plaintiffs who entered into backpay settlements and thereby released their claims against Conseco is **GRANTED**. The claims of all plaintiffs who fall within this category are **DISMISSED WITH PREJUDICE**.

   c. Defendants' motion to dismiss those plaintiffs who failed to allege that they worked overtime hours is **DENIED WITHOUT PREJUDICE**. Plaintiffs have until May 1, 2002 to file executed copies of the interrogatory responses currently under dispute. Should plaintiffs fail to comply with this requirement, Conseco may renew this motion.

d. Defendants' motion is **DENIED in all other respects**. However, defendants are permitted to renew the motions currently denied for the reasons stated in the opinion.

e. The issue of the applicable opt-in deadline is **REMANDED** to the Magistrate Judge for further proceedings consistent with this opinion.

DATED: March 31, 2002
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge