**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

**David C. Casas, Troy D. Clark, Patrick Hogan, Linda L. Souder, and William M. Soule on behalf of themselves and other past and present employees similarly situated,**

**Plaintiffs,**

v.

**Conseco Finance Corp., Conseco Finance Servicing Corp., Conseco Financing Corp. (Nevada), Conseco Finance Credit Corp., Conseco Finance Corp. – Alabama, and Conseco Finance Consumer Discount Company.**

**Defendants.**

**Civil No. 00-1512 (JRT/SRN)**

**ORDER**

---

Paul J. Lukas, Esq. and Michelle R. Fisher, Esq., on behalf of Plaintiffs.

Anne Huntrods, Esq. and Scott G. Bowman, Esq., on behalf of Defendants.

---

SUSAN RICHARD NELSON, United States Magistrate Judge

The above-entitled matter came before the undersigned United States Magistrate Judge on August 21, 2002, on Plaintiff's Motion to Amend Complaint to Include Claim of Willful Conduct (Doc. No. 368) and on September 23, 2002 for a Hearing for Determination of a Representative Sample.

This Order addresses both these issues.

NOV 1 8 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

## I. PLAINTIFF'S MOTION TO AMEND COMPLAINT TO INCLUDE CLAIM OF WILLFUL CONDUCT

### A. Factual Background.

In the present case, Plaintiffs have brought claims against their employers for violations of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, et seq. Specifically, Plaintiffs allege that Defendants incorrectly classified their positions as being exempt from the FLSA's requirements for overtime compensation. On March 31, 2002, the Honorable John R. Tunheim, United States District Court Judge for the District of Minnesota, granted in part and denied in part Plaintiffs' motion for summary judgment as to liability. Plaintiffs now seek to add a claim for willful violation of the FLSA.

### B. Discussion.

#### 1. Procedural Standard.

Federal Rule of Civil Procedure 15(a) provides that a court may allow amendments to pleadings "when justice so requires." In interpreting this rule, the Supreme Court has stated:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded the opportunity to test his claims on the merits. In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment . . . the leave sought should, as the rules require, be "freely given."

Foman v. Davis, 371 U.S. 178, 182 (1962). Neither delay nor dilatory motive are sufficient in themselves to deny a party leave to amend a pleading. The delay or dilatory motive must result in prejudice to the party opposing the motion. Buder v. Merrill Lynch, Pierce, Fenner & Smith,

644 F.2d 690, 694 (8th Cir. 1981). Even if the adverse party would suffer some prejudice if the motion to amend were granted, that prejudice must be balanced against the hardship to the moving party if the motion were denied. Id.

The Eight Circuit has held that "[a]lthough amendment of a complaint should be allowed liberally to ensure that a case is decided on its merits, . . . there is no absolute right to amend." Ferguson v. Cape Girardeau County, 88 F.3d 647, 650-51 (8th Cir. 1996). In particular, leave to amend may be properly denied when the proposed amendment would be futile. See Holloway v. Dobbs, 715 F.2d 390, 392-93 (8th Cir. 1983). The Eighth Circuit has also held, however, that amendments should be denied on the merits of the claim only if the amendment asserts clearly frivolous claims. Buder, 644 F.2d at 694. The determination as to whether to grant leave to amend is entrusted to the sound discretion of the trial court. Niagra of Wisconsin Paper Corp. v. Paper Industry Union Management Pension Fund, 800 F.2d 742, 749 (8th Cir. 1986).

**2. Substantive Standard.**

The Fair Labor Standards Act (FLSA) includes the following relevant statute of limitations:

> **(a)** if the cause of action accrues on or after May 14, 1947– [a cause of action for unpaid overtime compensation] may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued

29 U.S.C. § 255.

The United States Supreme Court has explained that a willful violation occurs when "the employer either knew or showed reckless disregard for the matter of whether its conduct was

prohibited by the statute." McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988). There is no willful violation, however, if an employer acts unreasonably but not recklessly. See Id. at 135 n.13.

### 3. The parties' positions.

Plaintiffs seek to amend the Complaint to add a claim of "willful" conduct. They argue that the motion should be granted because the proposed claim is not clearly frivolous. Plaintiffs state that during the relevant time period, Defendant never conducted an analysis of its overtime compensation practices. Instead, Plaintiffs contend, "Defendant relied upon a vague and incomplete decision made in 1996 by Greentree, a company it purchased in 1998." Plaintiffs argue that Defendant's lack of due diligence at the time it purchased Greentree is sufficient by itself to entitle them to argue to the jury that Defendant willfully violated the FLSA. They note that in Hardrick v. Airway Freight Systems, Inc., 63 F. Supp.2d 898, 904 (N.D. Ill. 1999), the court found a willful violation of the FLSA when an employer knew that an overtime provision existed, but did not investigate whether its policy was legal under the FLSA, and also did not consult with an attorney on the subject.

In addition, Plaintiffs explain that employees were continually complaining to Defendant over the overtime hours they worked and for which they were not paid. Further, Plaintiffs state that the employees informed Defendant it was violating the law, that its competitors had been successfully sued over the same practice, and that competitors paid their employees overtime for the same jobs. Plaintiffs also assert that Defendant ignored the lawsuits and Department of Labor investigations that were then underway in the industry. Nevertheless, Plaintiffs argue,

Defendant conducted no analysis of its overtime practice.

In further support of their motion, Plaintiffs contend that Defendant took deliberate steps to impede prosecution of the FLSA claim. As an example, Plaintiffs point to the Court's March 20, 2001 Order sanctioning Defendant for failing to disclose all of the loan originators. Plaintiffs also state Defendant demanded that its employees not accurately record their overtime hours. In addition, according to Plaintiffs, Defendant failed to timely produce the computer files of Barbara Didrickson (one of Defendant's human resources officers). Finally, they state that Defendant continues to violate the law.

Defendant responds that Plaintiff's motion should be denied, because any claim for willful infringement would be futile. Defendant states that it attempted in good faith to comply with the FLSA. Didrickson was a human resources specialist with knowledge of the FLSA, and Defendant states that "[s]he applied her knowledge of the FLSA in classifying the loan originator position." Defendant states that the legal department was also consulted on the classification.

Defendant explains that its conduct was more careful than that of an employer in Brock v. Claridge Hotel & Casino, 846 F.2d 180 (3d Cir. 1988), whom the court found had not willfully violated the FLSA. Moreover, while the Court has determined that Defendant did incorrectly interpret the FLSA, Defendant argues that fact alone is insufficient to support a finding of willful conduct. Defendant also argues that the law was uncertain at the time it classified the loan originators. It explains that the commission sales exemption would arguably have been applicable to the loan originators if not for Defendant being classified as a finance company. Moreover, "the only authority for this exclusion from the exemption is a Department of Labor regulation incorporating a 1959 Supreme Court case." Defendant observes that several courts

have rejected the broad conclusory approach of this Department of Labor regulation.

Defendant also states that it hired a law firm in late 1999 to review the loan originator position, and, consequently, reclassified the position. Defendant emphasizes "the review and reclassification was voluntary and not instigated by Plaintiffs' lawsuit." Therefore, Defendant maintains it acted reasonably and without intent to violate the FLSA.

With respect to employee complaints, Defendant states there is no evidence that the complaints were made substantially before it voluntarily reclassified the position. Further, only a small percentage of the loan originators actually complained, and most of the complaints were vague and insufficient to support finding a willful violation. In addition, Defendant states it did not disregard the complaints in willful disregard of the FLSA, instead, it disregarded them because it believed the classification was correct.

Defendant maintains that its record keeping practices are not evidence of a willful violation. Defendant explains that it tracked employee absences but did not require employees to record their actual hours worked, because under the exempt classification, these employees would not be entitled to overtime compensation. Rather than demonstrating a willful violation, Defendant states its recording practice was consistent with its belief that the employees were exempt. In response to Plaintiffs' allegation that some employees were not permitted to record more than 40 hours per week, Defendant states that in Reich v. Newspapers of America, 44 F.3d 1060 (1st. Cir. 1995), the court held the same practice was not a willful violation. Further, Defendant argues the employer's behavior in Reich was even more egregious than that alleged in the present case, because the employer in Reich actually had a policy of paying its employees overtime, hence, "the employer's instructions had a direct impact on the amount of overtime and

compensation the employer would pay and was designed to avoid overtime payments that the employer knew it should pay."

Further, Defendant states that any knowledge its managers gained while at their former employers should not be imputed to it. These managers were not acting in the course of their employment with Defendant at that time, and "the supposed knowledge was also not within the scope of their authority." Defendant also explains that there is no evidence indicating the managers at issue knew about, or had any involvement in, the investigations or lawsuits involving Defendant's competitors. Also, of all the investigations Plaintiffs cite, "only three were resolved when Conseco Finance's loan originators were classified as exempt, and those proceedings did not relate to loan originators."

Defendant states that it did not destroy evidence or impede prosecution of the wage and hour claims. Defendant explains that it did not initially produce a list of MHD originators because of confusion concerning the scope of the present case. While the Court found that the Complaint was vague and ordered Plaintiffs to amend it, and specifically identify the intended scope of their class, "Plaintiffs' Amended Complaint did little to clarify the scope, merely generalizing that it was brought on behalf of similarly situated employees 'across the country.'" In addition, the notice of pendency of lawsuit mentioned HID and RMS originators, but not MHD originators. The issue was not clarified, according to Defendant, until the Spring of 2001, when Plaintiffs moved to compel production of the identities of the MHD originators. At that time, Defendant states it immediately produced a list of them. When the Court sanctioned Defendant for delay in producing the list of originators, it extended the time for potential plaintiffs to join the present case. As a result, Defendant maintains the delay should not now be a

basis for alleging willful violation. In addition, Defendant states that "the Parties' after-the-fact discovery dispute has no relevance to whether Conseco Finance's classification of originators and failure to pay overtime was 'willful.'"

The issue of Didrickson's computer files should also not support adding a claim for willful violation of the FLSA, according to Defendant. Defendant explains that it did not destroy any computer files, and any delay in production did not result in the loss of relevant information. Further, Defendant states it promptly produced Didrickson's hard drive pursuant to the parties' agreement.

Finally, Defendant states that any allegations of continued FLSA violations are irrelevant to the question of whether its pre-classification behavior constituted a willful violation. Defendant quotes the Court's March 31, 2002 Order, which stated, "plaintiffs concede that individuals who started working for Conseco after the reclassification occurred do not have actionable claims for overtime wages and must be dismissed."

**4. The Court's Order.**

The Court grants Plaintiffs' motion. Plaintiffs' evidence in support of their motion is sufficient to meet the liberal standard for amending a pleading, and the proposed willful claim is not futile. "To sustain its right to amend the complaint, the plaintiff does not have to prove all the elements of the proposed claim; it is sufficient if plaintiff demonstrates there is some plausible basis in the record to support these claims. *Island Creek Coal Co. v. Lake Shore, Inc.*, 832 F.2d 274 (4th Cir.1987)." Assam v. Deep Park Spring Water, Inc., 163 F.R.D. 400, 404 (E.D. N.Y. 1995).

While Defendant offers significant evidence in opposition to the current motion,

Defendant's argument would be more appropriate at the summary judgment stage of this proceeding. All of the cases Defendant cites in its opposition address this issue in the context of a summary judgment motion rather than a motion to amend the pleadings. These cases should not control the Court's decision on the present motion, because the standard for summary judgment is quite distinct from the standard for amending the pleadings.

In S.S. Silberblatt, Inc. v. East Harlem Pilot Block, 608 F.2d 28, 42 (2d Cir. 1979), the court explained that where the alleged futility of an amended pleading rests on findings of fact dependent on matters outside the pleadings, the issue is better left for summary judgment. Since Silberblatt, courts have permitted a party to amend its pleadings even when it appeared that the amended claim would likely be dismissed at the summary judgment stage. See e.g. Schwimmer v. Guardian Life Ins. Co., 1996 WL 146004, at *3 (S.D. N.Y. April 1, 1996) (although proposed amendment will not survive a motion for summary judgment, "it is not so frivolous or outlandish to render it futile."); Arnold v. Spanierman, No. 94 Civ. 2501(DLC), 1994 WL 673642, at *1 (S.D. N.Y. Dec.1, 1994)("[w]hen, as in this case, the argument against allowing the amended complaint is based upon the assertion that the evidence will not support the allegations made, an evaluation of the merits is better left to a motion for summary judgment or for trial.").

In the present case, Plaintiffs have certainly made a colorable claim for willful violation of the FLSA. The proposed claim would not be subject to a successful motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Therefore, the Court grants Plaintiffs' motion to amend the Complaint to add a claim for willful conduct.

## II. HEARING FOR DETERMINATION OF A REPRESENTATIVE SAMPLE

In its July 24, 2002 Order, the Court stated that it would conduct a hearing to determine

whether it was possible to select an appropriate representative sample of Plaintiffs for trial, or if instead, it would be necessary to try the present case as a collective action. The parties were instructed to submit position papers outlining their proposals for trial, and also to present evidentiary testimony. On September 23, 2002, the Court conducted a hearing on this issue.

Through their position papers and oral presentations, both sides advised the Court that they did not believe the case could be tried by means of a representative sample. Plaintiffs proposed proving damages by providing the jury with interrogatory answers from all of the Plaintiffs. Defendants proposed a bellwether trial, and provided a statistical expert, Dr. Ali Saad, in support of their proposal. Dr. Saad, however, testified that he did not know whether the proposed 15 to 25 bellwether Plaintiffs would make it possible to try the case through a representative sample.

Plaintiffs currently have claims for compensatory damages and also for liquidated damages. With respect to liquidated damages, the FLSA states,

> if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938 as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title.

29 U.S.C. § 260.

Because the FLSA requires that the employer make a showing of good faith and reasonable grounds "to the satisfaction of the court," courts have repeatedly held that the determination of whether an employer is liable for liquidated damages is to be made by a judge rather than a jury. See e.g. Fowler v. Land Mgmt. Goupe, Inc., 978 F.2d 158, 163 (4th Cir. 1992);

McLanahan v. Mathews, 440 F.2d 320, 322 (6th Cir. 1971); Martin v. Detroit Marine Terminals, Inc., 189 F. Supp. 579 (E.D. Mich. 1960).

In light of this requirement, the Court has decided to try the issue of entitlement to liquidated damages first.[1] This issue can be tried one of two ways. The parties may consent to try the issue before the undersigned Magistrate Judge, or the parties may try the issue before Judge Tunheim. If the parties choose the former option, the Court will schedule a date certain for trial on this issue in January 2003. If the parties choose the latter option, then at the time they indicate this choice Judge Tunheim will consider the issue trial ready. Judge Tunheim is currently unable to provide a date certain for trial, however, his chambers will notify the parties if and when time becomes available.

**THEREFORE, IT IS HEREBY ORDERED that:**

Plaintiff's Motion to Amend Complaint to Include Claim of Willful Conduct (Doc. No. 368) is **GRANTED**.

Dated: November 15, 2002

SUSAN RICHARD NELSON
United States Magistrate Judge

[1]The actual amount of liquidated damages, of course, can not be determined until after the jury determines the amount of overtime compensation owed to Plaintiffs. See 29 U.S.C. §§ 216(b) & 260.